A97A0407. FRIEDLANDER v. HMS-PEP PRODUCTS, INC. et al.
(485 SE2d 240)

BLACKBURN, Judge.

Mitchell K. Friedlander appeals the trial court's grant of summary judgment in favor of HMS-PEP Products, Inc. (Pep), Gregory Thomas, and an unspecified number of John Doe defendants. Friedlander's suit alleged violations of the Uniform Deceptive Trade Practices Act, OCGA § 10-1-370 et seq., and the False Advertising Act, OCGA § 10-1-420 et seq.[1] His primary contention is that the trial court erroneously found that he lacked standing to bring suit under either of these statutes.

Friedlander holds a patent for a weight loss drug product. With the exception of some tests which were done at the inception of the patent, Friedlander has never produced a product from this patent which could be marketed to the consuming public. Although he plans to eventually seek approval from the Food & Drug Administration (FDA) for a tablet containing his patented ingredients, he has yet to apply for any such approval. He admits that it could take years to obtain the FDA approval he needs to sell his product to consumers. Pep is the manufacturer of two weight loss products, Diet Pep and Ultra Diet Pep. Pep markets these products as dietary supplements, and sells them nationwide at health food stores, grocery stores, and drug stores.[2]

1. The trial court determined that Friedlander lacked standing to maintain his claims under either the Uniform Deceptive Trade Practices or the False Advertising Acts. The court based this ruling upon its findings that Friedlander was neither selling nor marketing

---

[1] Friedlander's complaint also alleged a violation of the Fair Business Practices Act, OCGA § 10-1-390 et seq., but after the Supreme Court determined in *Friedlander v. PDK Labs,* 266 Ga. 180 (465 SE2d 670) (1996), that Friedlander lacked standing to pursue a claim under that act, he abandoned that claim.

[2] Gregory Thomas is the proprietor of a General Nutrition Center health food store where Friedlander purchased Pep's products. Friedlander never amended his complaint to specify who his other John Doe defendants are, but he maintains that they are Georgia retailers currently selling and marketing Diet Pep and Ultra Diet Pep. As Friedlander's claims include all of the defendants, they will be collectively referred to as Pep.

a weight control product, and that he and Pep were not competitors in the weight loss market. Friedlander enumerates these findings as error.

(a) Injunctive relief is the only remedy available to a party under the Uniform Deceptive Trade Practices Act, OCGA § 10-1-370 et seq.[3] To receive injunctive relief, a person must be "likely to be damaged by a deceptive trade practice of another." OCGA § 10-1-373 (a). Friedlander contends he is damaged or is likely to be by the lack of consumer confidence in the marketplace regarding weight loss products in general, brought about by the large number of false weight loss products like Pep's. He also claims that Pep's actions have damaged his reputation.[4] The record, however, contains no evidence in support of either of these propositions.

Friedlander's contention that he is likely to be damaged in the future, when he ultimately produces a weight loss product, cannot confer standing in this case. Friedlander has no product on the market competing with Pep's, he is years away from having any such product, and it is possible that he may never have such a product. With respect to current damages, Friedlander contends that the affidavit of one of his investors proves he has been damaged. This affidavit states that the investor is willing to invest further money in Friedlander's product "but for the fact that [Pep's products] continue to be sold in the marketplace without substantiation of their safety and efficacy or undergoing required premarket approval." Friedlander is not entitled to an injunction for deceptive trade practices where the damages he claims are so remote and speculative as to avoid any attempt to quantify them. Such is the case with any damages which may be inferred from this investor's affidavit. These presumed damages are not sufficiently concrete to either confer standing or justify the issuance of an injunction.

Friedlander also contends that he has standing because he is Pep's competitor — he receives royalties from another company for the sale of its weight loss products. However, the record indicates that Friedlander does not receive any such royalties, because he executed an assignment of these royalty rights to another company.[5] He

---

[3] Friedlander's first amended complaint seeks both restitution and injunctive relief. As injunctive relief is the only remedy available under the Act, summary judgment was appropriate with respect to all claims for monetary relief. See *Akron Pest Control v. Radar Exterminating Co.*, 216 Ga. App. 495, 498 (2) (455 SE2d 601) (1995).

[4] Friedlander does not allege that Pep infringed on his patent, that he is a consumer of Pep's products who has been damaged by the products, or that Pep's products ever misled him.

[5] Friedlander's affidavit attached to his supplemental appellate brief stating that Pep's activities have reduced his royalties cannot be considered by this Court, as it is not contained in the record. See *Ehlers v. Schwall & Heuett*, 177 Ga. App. 548, 550 (340 SE2d 207) (1986).

further argues that he has standing because the Supreme Court found that he and the maker of another diet control product were competitors in *Friedlander v. PDK Labs*, supra, 266 Ga. 180, but *PDK Labs* is distinguishable. It specifically addressed Friedlander's standing under the Georgia Fair Business Practices Act, and that Act is not at issue in this case. Additionally, as we are faced with different parties and a different record than the Supreme Court reviewed in reaching its decision in *PDK Labs*, we are not bound to conclude that Friedlander has standing as a matter of law.

The trial court correctly concluded that Friedlander was not a person likely to be damaged by Pep's allegedly deceptive trade practices, as Friedlander has failed to show the existence of some interest he possesses capable of sustaining damages from Pep's actions. At the very minimum, Friedlander must show some causal connection between something Pep has done and his own non-speculative damages in order to receive relief. Under the standard of *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991), where a defendant-movant on a motion for summary judgment shows the court that there is "no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case," then summary judgment is appropriate. Friedlander having failed to "point to specific evidence giving rise to a triable issue," summary judgment for lack of standing on the Deceptive Trade Practices claim was proper. Id.

(b) Friedlander also contests the trial court's finding that he lacked standing to pursue his claims under the False Advertising Act, OCGA § 10-1-420 et seq. In order for a party to receive injunctive relief under that Act, the party must be "aggrieved or about to be aggrieved" by the false advertising sought to be enjoined. OCGA § 10-1-423. In the same way that he failed to show he was damaged or likely to be damaged by Pep's allegedly deceptive trade practices, Friedlander has also failed to show that any of Pep's advertising has aggrieved him or potentially will aggrieve him. Friedlander therefore lacks standing to pursue this claim, and the trial court correctly granted summary judgment on this issue.

2. Friedlander contends the trial court erred in determining he lacked standing to assert violations of the Federal Food, Drug & Cosmetic Act, 21 USCS § 301 et seq. According to Friedlander, Pep's products are new drugs being illegally sold without FDA approval. However, the Act provides that all proceedings for its enforcement must be brought by the United States, or, in certain circumstances, by a state. See 21 USCS § 337 (a). No private right of action exists for its enforcement. See *Nat. Women's Health Network v. A. H. Robins Co.*, 545 FSupp. 1177, 1178 (Mass. 1982). Accordingly, Friedlander has no standing to bring any sort of claim against Pep for allegedly violating this Act, and to the extent he has attempted to do so, the

trial court did not err in granting summary judgment for Pep.

3. In light of our holding in Division 1, we need not address Friedlander's contention that summary judgment should have been granted for him.

4. Because Friedlander could have no reasonable basis for anticipating reversal of the trial court's judgment, see *Hallisy v. Snyder*, 219 Ga. App. 128, 129 (464 SE2d 219) (1995), pursuant to Court of Appeals Rule 15 (b), a penalty of $500 for frivolous appeal is imposed against Friedlander. The trial court is ordered to enter judgment against Friedlander in this amount upon return of the remittitur.

*Judgment affirmed. Pope, P. J., and Johnson, J., concur.*

DECIDED MARCH 19, 1997 —
RECONSIDERATION DISMISSED APRIL 9, 1997 — 

 Before Judge Wyatt Cummings Moore.
Mitchell K. Friedlander, *pro se*.

Arnall, Golden & Gregory, William H. Kitchens, John C. Spinrad, for appellees.