S11A0508, S11X0509. CITY OF ATLANTA v. HOTELS.COM et al.; and vice versa.
S11A0510, S11X0512. HOTELS.COM et al. v. CITY OF ATLANTA; and vice versa.

(710 SE2d 766)

BENHAM, Justice.

Hotels.com et al. are online travel companies (OTCs) which book hotel rooms and make other travel arrangements for customers who access their services over the internet. The OTCs' business model, known as the "merchant model," is fully detailed in *Expedia v. City of Columbus*, 285 Ga. 684 (681 SE2d 122) (2009). In sum, the consumer pays the OTC a retail "room rate" and a line item for "taxes and fees" in order to reserve and later occupy one of the City's hotel rooms. The consumer pays nothing to the hotel for occupancy or taxes and only provides a credit card at check-in.

The City of Atlanta requires the payment of hotel occupancy taxes pursuant to OCGA § 48-13-50 et seq. (the "Enabling Statute") which provides for municipalities to impose an excise tax "at the applicable rate on the lodging charges actually collected." OCGA § 48-13-51 (a) (1) (B) (i). Section 146-79 of the City's ordinance provides: "There is levied and assessed and there shall be paid a tax of seven percent of the rent for every occupancy of a guestroom in a

hotel in the city." Per the Enabling Statute, these taxes are imposed upon and collected from the hotel guest. OCGA § 48-13-51 (a) (1) (B) (ii) ("Any tax levied . . . in this Code section is also imposed upon every person or entity who is a hotel or motel guest and who receives a room. . . ."). Section 146-80 of the City's ordinance also states: "Every person occupying a guestroom in a hotel in this city is liable for the tax levied in this article." Finally, "[t]he person or entity collecting the tax from the hotel or motel guest shall remit the tax to the governing authority imposing the tax. . . ." OCGA § 48-13-51 (a) (1) (B) (ii). The taxes must be remitted to the City by the twentieth day of the month following the month in which the occupancy occurred. OCGA § 48-13-53.2 (a); City of Atlanta Code of Ordinances § 146-85.

Under the merchant model, the OTCs calculate the hotel occupancy tax amount based on the wholesale rate the OTC negotiates with hotels for the right to broker rooms and not on the retail room rate the OTC charges the customer for the right to occupy a room. The OTC retains whatever it has collected from the consumer over the amount of the remittance to the hotel. If the hotel fails to submit an invoice or charge to the OTC in the time period designated by contract, then the OTC retains all monies collected from the customer, including any money purportedly collected for the payment of hotel occupancy taxes.

The City brought an action alleging that the retail room rate was the appropriate amount upon which to base the hotel occupancy tax and seeking injunctive relief, as well as back taxes from the OTCs. In its order granting in part and denying in part both parties' motions for summary judgment, the trial court made the following findings and conclusions:

a. Found that the OTCs were neither "innkeepers" nor "operators" as defined by the Enabling Act or by the City's ordinance.

b. Found that the OTCs were, as a matter of fact, collecting taxes as part of their bargain with the City's hotels, regardless of whether their various contracts with the hotels contained express verbiage requiring the OTCs to collect taxes.

c. Concluded that the OTCs were third-party tax collectors who were required to remit collected taxes to the City based on the room rate and not based on the negotiated wholesale rate.

d. Voided those portions of the OTC contracts which called for collecting and remitting taxes based on the negotiated wholesale rate.

e. Issued an injunction, ordering the OTCs, so long as they continued to collect taxes from customers seeking to occupy the City's hotel rooms, to collect taxes based on the room rate, to remit or cause to be remitted the collected taxes to the City, and ordering the OTCs to maintain data on: the City hotels booked, the customers who actually occupied the City's hotel rooms, the room rates charged to the customers, and the amount of taxes collected and remitted.

f. Rejected all of the OTCs' constitutional claims pursuant to *Expedia v. City of Columbus*, supra, 285 Ga. at 691.

g. Found that the City did not have any remedy under the Enabling Statute or the City's Ordinance for back taxes because the OTCs are not innkeepers or operators.

h. Found that the City failed to establish the essential elements of its unjust enrichment claim (as well as the collateral claim of a constructive trust), namely that it had conferred a benefit on the OTCs.

i. Found that the City had no claim for money had and received because the City failed to provide sufficient evidence that it demanded payment from the OTCs.

j. Found that the City had no equitable remedy based on the claims raised.

Both parties have appealed and cross-appealed the trial court's order. For reasons set forth below, we affirm the judgment of the trial court.

*Enumerations of Error Raised by the OTCs*

1. The OTCs assert that the trial court erred when it determined that the "rent" for occupying a City hotel room is the room rate paid by the consumer rather than the negotiated wholesale rate between the OTC and the hotel. The interpretation of statutes and ordinances is a question of law, which we review de novo on appeal. *Expedia v. City of Columbus*, supra, 285 Ga. 684 (4). The Enabling Statute provides for municipalities to impose an excise tax "at the applicable rate on the lodging charges actually collected." OCGA § 48-13-51 (a) (1) (B) (i). Section 146-79 of the City's ordinance provides: "There is levied and assessed and there shall be paid a tax of seven percent of the rent *for every occupancy* of a guestroom in a hotel in the city," (emphasis supplied), and section 146-76 defines "rent" as "the consideration received *for occupancy* valued in money. . . ." (Emphasis supplied.) Additionally, section 146-80 states: "Every person *occupying* a guestroom in a hotel in this city is liable for the tax levied in this article." (Emphasis supplied.) Under the statute and

ordinance, the tax is on the consumer. The statute and ordinance do not tax any transaction between a non-occupant such as an OTC and the hotel.[1] Thus, reading the ordinance in toto and in pari materia to the Enabling Statute, the amount that is taxable is the retail amount paid for occupancy by someone who will occupy the room. Since the consumer cannot obtain the right to occupy the room without paying the retail room rate charged by the OTC, it is the retail room rate that is the taxable amount or "rent" under the City's ordinance.[2] See also *City of Fairview Heights v. Orbitz, Inc.*, 2006 WL 6319817 at *5-6, 2006 U.S. Dist. LEXIS 47085 at *19-20 (S.D. Ill. July 12, 2006) ("rent charged" was amount hotel room occupant paid to the OTC and not the negotiated wholesale rate). Accordingly, the trial court's conclusion on this issue must be sustained.

2. The OTCs allege the trial court erred in issuing the injunctive relief described herein at paragraph (e), supra. We disagree. As we explained in *Expedia v. City of Columbus*, supra, 285 Ga. at 688 (2), there is no governmental authority in the City, or in this State, that requires any OTC to collect hotel occupancy taxes. Rather the OTCs are following their business model when they collect money for the payment of hotel occupancy taxes from consumers who wish to occupy the City's hotel rooms.[3] Inasmuch as the OTC is the merchant of record and the consumer pays the line item "taxes and fees" to the OTC and makes no tax payment to any other entity, then the OTC is collecting taxes as a matter of fact during each and every such transaction with the consumer who is the end user of the hotel room.

Each provision of the trial court's injunction is qualified with the phrase "so long as the OTCs collect hotel occupancy taxes and/or all applicable taxes from their customers," recognizing for "so long as" the OTCs voluntarily collect taxes from consumers seeking to occupy rooms in the City's hotels, taxes must be collected and remitted based on the room rate paid by the consumer for occupancy.[4] Id. The

---

[1] Under the merchant model, a hotel does not receive any money unless and until it invoices or charges the OTC *after* the consumer has occupied the room. The hotel does not receive any rent upon interacting with the consumer.

[2] Therefore, if the OTC agrees to pay $60 to the hotel for the right to market a hotel room, but charges the consumer $100 as the room rate, then the taxable amount is $100 under the City's ordinance.

[3] This is the reason why the constitutional claims of the OTCs also fail and will not be revisited by this Court. *Expedia*, supra, 285 Ga. at 690-691 (5).

[4] It is necessary to express here a point of clarification. The OTCs have argued that since we stated in *Expedia* that the OTCs must remit the taxes "actually collected" that this term means tax money based on the negotiated wholesale rate. To the contrary, the words "actually collected" distinguish the tax money already collected by Expedia from the tax money it has not or possibly will not, collect in the future, knowing that Expedia could change its business model at any time. Our opinion did not and could not state what amount of tax money Expedia "actually collected" because Expedia, like the rest of the OTCs, does not separate the line item

monies collected do not belong to the OTCs or the hotels, but are held in trust for the City. See, e.g., *Ready Trucking, Inc. v. BP Exploration & Oil Co.*, 248 Ga. App. 701, 705 (2), n. 2 (548 SE2d 420) (2001) ("one is free to enter into an agreement to reimburse another for a tax obligation, as long as the State ultimately receives the proper amount of tax. [Cit.]"); *Alon USA, LP v. State*, 222 SW3d 19, 28 (Tex. App. 2005) (since the state is the beneficiary of the tax, any intermediary persons purporting to collect taxes are obligated to hold such funds in trust for the state and may become liable to the state for payment).

In addition, the OTCs' argument concerning whether the City is or is not a third-party beneficiary of their contracts with hotels is inapposite. The City does have an interest in regard to the OTCs' transactions as third-party tax collectors. If the OTCs were to cease acting as third-party tax collectors, the injunction would be moot; however, if the OTCs continue collecting hotel occupancy taxes from consumers occupying City hotel rooms, the OTCs shall collect and remit those tax monies lawfully, i.e., based on the room rate charged to the consumers for occupancy. The trial court did not err in issuing its injunctive order.

3. The OTCs argue that the trial court erred when it voided those portions of their contracts which provided that hotel occupancy taxes would be collected and remitted based on the negotiated wholesale rate. "A contract to do an immoral or illegal thing is void. If a contract is severable, however, the part of the contract which is legal will not be invalidated by the part of the contract which is illegal." OCGA § 13-8-1. The statute gives Georgia courts authority to void contracts and/or portions thereof. In this case, pretermitting whether any portions of the OTCs' contracts with the City's hotels are void, contractual terms which call for the under remission of hotel occupancy taxes would be unenforceable. Since we have ruled that the City's ordinance requires the collection and remission of taxes based on the room rate paid by the consumer, it would be unlawful for any entities collecting hotel occupancy taxes in the City to do so in a manner that is inconsistent with this opinion.

In this case, the trial court was not called upon to decide whether the various contracts were enforceable, and so reaching a determination that the contracts were void was improper. However, because the injunction provides for the proper collection and remittance of the City's hotel occupancy taxes should the OTCs elect to continue to act as third-party tax collectors, the error is effectively moot and provides no basis for reversal.

---

"taxes and fees" in its transactions.

*Enumerations of Error Raised by the City*

4. The City contends that the trial court erred when it held that the City did not have a remedy for back taxes. The trial court's order found that (1) the City did not have a remedy under the Enabling Statute or its hotel occupancy tax ordinance because the OTCs were not innkeepers or hotel operators; and that (2) the City did not show it had a remedy under the claims asserted — unjust enrichment and money had and received (along with collateral issues of imposing a constructive trust and an equitable accounting).[5] We find no error with the trial court's decision to grant summary judgment in favor of the OTCs on these asserted claims.

In order to sustain an action for money had and received, a party must show, in addition to showing that an entity has received money justly belonging to another, that it made a demand for payment and was refused. *Fernandez v. WebSingularity, Inc.*, 299 Ga. App. 11 (2) (681 SE2d 717) (2009). The City concedes that it did not make any demand for payment, but rather made a request for information. Pursuant to these facts, it was not error for the trial court to grant summary judgment to the OTCs on the claim for money had and received. Likewise, to sustain a general claim of unjust enrichment, the City was required to show that it conferred a benefit to the OTCs for which the City should be equitably compensated. *Tuvim v. United Jewish Communities, Inc.*, 285 Ga. 632 (2) (680 SE2d 827) (2009). Here, although the facts show that OTCs have the use of occupancy tax money prior to the consumer's occupancy of a City hotel room and that such circumstance is likely a favorable posture for the OTCs, that is not a benefit conferred by the City. The City has failed to identify a benefit it has conferred on the OTCs and, accordingly, the summary judgment in favor of the OTCs is sustained.

*Judgment affirmed. All the Justices concur.*

DECIDED MAY 16, 2011 —
RECONSIDERATION DENIED JUNE 13, 2011.

*Bryan, Cave, Powell & Goldstein, Robert M. Travis, Michael P. Carey, John R. Bielema, Jr., Pope, McGlamry, Kilpatrick, Morrison & Norwood, Neal K. Pope, Charles N. Pope, Michael L. McGlamry, R. Timothy Morrison, William U. Norwood III, Wade H. Tomlinson III*, for City of Atlanta.

*Bondurant, Mixson & Elmore, Emmet J. Bondurant, Frank M. Lowrey IV, Jones Day, Robin A. Schmahl, Edward K. Smith, Deborah*

---

[5] Although the City mentions a common law claim for conversion in its briefs, any such claim was not ruled upon by the trial court and cannot be considered on appeal. *Messaadi v. Messaadi*, 282 Ga. 126 (3) (646 SE2d 230) (2007).

*S. Sloan, James P. Karen, Rogers & Hardin, Brett A. Rogers, Richard H. Sinkfield, McDermott, Will & Emery, Mark J. Altschul, Jeffrey Rossman, Elizabeth B. Herrington, Kelly, Hart & Hallman, Brian S. Stagner, Marcus G. Mungioli, Chad Arnette,* for Hotels.com, L.P. et al.

*Archer & Lovell, David G. Archer, Brinson, Askew, Berry, Seigler, Richardson & Davis, Robert M. Brinson, J. Anderson Davis, Norman S. Fletcher, Samuel L. Lucas, John W. Crongeyer, Lamar, Archer & Cofrin, Robert C. Lamar, David W. Davenport, Keith A. Pittman, Elarbee, Thompson, Sapp & Wilson, Kenneth N. Winkler, Nelson, Mullins, Riley & Scarborough, Matthew J. Simmons, Walter J. Gordon, Sr., Kevin A. Ross,* amici curiae.