**THIRD DIVISION**
**ELLINGTON, P. J.,**
**DILLARD and MCFADDEN, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**July 9, 2015**

# In the Court of Appeals of Georgia

A15A0117. CITY OF ATLANTA v. HOTELS.COM, L. P. et al.

MCFADDEN, Judge.

This is the latest chapter in litigation between the City of Atlanta, Georgia (the City) and several online travel companies (OTCs) regarding occupancy taxes due on hotel rooms in the City that are booked by customers through the OTCs pursuant to contracts between the OTCs and hotels. In earlier proceedings, our Supreme Court affirmed the trial court's summary judgment rulings on most of the claims brought by the City against the OTCs. *City of Atlanta v. Hotels.com*, 289 Ga. 323 (710 SE2d 766) (2011). This appeal challenges the trial court's grant of summary judgment to the OTCs on the two remaining claims in the case: conversion and breach of trust. We affirm the grant of summary judgment because the undisputed evidence shows that the City seeks to recover property not subject to a conversion claim and because

earlier proceedings in the case preclude the breach of trust claim. The City also appeals from the trial court's denial of its motions seeking additional discovery. We affirm that ruling as well because the City has shown no abuse of discretion.

1. *Facts and procedural posture.*

Our Supreme Court set forth the facts of this case in *City of Atlanta v. Hotels.com*, supra, 289 Ga. 323. The OTCs "book hotel rooms and make other travel arrangements for customers who access their services over the internet." Id. at 323. Under their business model, known as the "merchant model,"

> the consumer pays the OTC a retail "room rate" and a line item for "taxes and fees" in order to reserve and later occupy one of the City's hotel rooms. The consumer pays nothing to the hotel for occupancy or taxes and only provides a credit card at check-in. . . . [T]he OTCs calculate the hotel occupancy tax amount [required by the City pursuant to OCGA § 48-13-50 et seq.] based on the wholesale rate the OTC negotiates with hotels for the right to broker rooms and not on the retail room rate the OTC charges the customer for the right to occupy a room. The OTC retains whatever it has collected from the consumer over the amount of the remittance to the hotel. If the hotel fails to submit an invoice or charge to the OTC in the time period designated by contract, then the OTC retains all monies collected from the customer, including any money purportedly collected for the payment of hotel occupancy taxes.

2

*City of Atlanta v. Hotels.com*, 289 Ga. at 323-324.

"The City brought an action alleging that the retail room rate was the appropriate amount upon which to base the hotel occupancy tax and seeking injunctive relief, as well as back taxes from the OTCs." Id. at 324. The trial court granted in part and denied in part the parties' motions for summary judgment and the Supreme Court affirmed that judgment. Id. at 324-325. In pertinent part, the Supreme Court affirmed the trial court's holdings: (1) that "the 'rent' for occupying a City hotel room is the room rate paid by the consumer rather than the negotiated wholesale rate between the OTC and the hotel," id. at 325-326 (1); (2) that the City was entitled to an injunction ordering the OTCs, so long as they voluntarily collected taxes from customers seeking to occupy the City's hotel rooms, to do so based on the room rate, to remit the taxes to the City, and to maintain certain data relevant to the collection and remittance of the taxes, id. at 326-327 (2); and (3) that "the City did not show it had a remedy [for the recovery of back taxes] under the claims asserted – unjust enrichment and money had and received (along with collateral issues of imposing a constructive trust and an equitable accounting)," id. at 328 (4) (footnote omitted). The Supreme Court also held that the trial court had not ruled upon the City's claim for conversion. Id. at 328 (4) n. 5. Consequently, the "case remained open following the

3

issuance of the remittitur." *Trip Network v. Dempsey*, 293 Ga. 520, 522 (748 SE2d 432) (2013) (citation omitted) (addressing impact of Supreme Court's holding regarding conversion claim in *City of Atlanta v. Hotels.com*, supra, 289 Ga. 323).

Once the case returned to the trial court, the City amended its complaint to add a new claim for breach of trust, citing a statement by the Supreme Court that "[t]he monies [voluntarily collected by the OTCs as taxes from consumers] do not belong to the OTCs or the hotels, but are held in trust for the City." *City of Atlanta v. Hotels.com*, 289 Ga. at 326-327 (2) (citations omitted). The OTCs moved for summary judgment on the conversion claim that the Supreme Court said had not earlier been decided and on the new breach of trust claim. The City sought additional discovery. The trial court entered an order granting summary judgment on the conversion and breach of trust claims and denying additional discovery to the City.

2. *Summary judgment.*

The City argues that the trial court erred in granting summary judgment to the OTCs on the City's claims for conversion and breach of trust. Summary judgment is properly granted when the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." OCGA § 9-11-56 (c). "On appeal from the grant or denial of summary

4

judgment, we conduct a de novo review, with all reasonable inferences construed in the light most favorable to the nonmoving party." *Scrocca v. Ashwood Condominium Assn.*, 326 Ga. App. 226 (1) (756 SE2d 308) (2014) (citation and punctuation omitted).

(a) *Conversion.*

The trial court did not err in granting summary judgment on the City's claim for conversion of "monies owed to the City in the way of taxes collected by [the OTCs] but not remitted," because generally money is not subject to a civil action for conversion and the City has pointed to no evidence showing that the money in this case comprised a specific, separate, identifiable fund excepting it from that general rule. See *Taylor v. Powertel, Inc.*, 250 Ga. App. 356, 359 (2) (551 SE2d 765) (2001).

"Conversion consists of an unauthorized assumption and exercise of the right of ownership over personal property belonging to another, in hostility to his rights; an act of dominion over the personal property of another inconsistent with his rights; or an unauthorized appropriation." *Maryland Cas. Ins. Co. v. Welchel*, 257 Ga. 259, 261 (1) (356 SE2d 877) (1987) (citation and punctuation omitted). To establish a claim for conversion, a plaintiff must show "(1) title to the property or the right of possession, (2) actual possession in the other party, (3) demand for return of the

property, and (4) refusal by the other party to return the property." *Trey Inman &
Assoc. v. Bank of America*, 306 Ga. App. 451, 457 (4) (702 SE2d 711) (2010)
(citation and punctuation omitted).

The general rule is that money is not a type of property that is subject to an
action for conversion. See id. at 458 (4); *Taylor*, 250 Ga. App. at 359 (2). "While
money constitutes personal property, money is intangible property that is fungible,
because it belongs to a class of property which cannot be differentiated by specific
identification unless there has been created a specific fund that has been set aside
from other money." *Taylor*, 250 Ga. App. at 359 (2) (citations omitted). Where a
plaintiff "is not seeking to recover some specific money, . . . but instead seeks to
recover a certain amount of money generally[,] . . . [it] is not a case for which a cause
of action for conversion was intended." *Hodgskin v. Markatron, Inc.*, 185 Ga. App.
750, 751 (1) (365 SE2d 494) (1988) (citation omitted). See generally *Decatur Auto
Center v. Wachovia Bank*, 276 Ga. 817, 820-821 (583 SE2d 6) (2003) (discussing
examples of conversion claims seeking to recover specific money in context of claim
to recover face value of converted check). "[C]onversion is not a viable claim where
there is nothing more than a failure by the defendant to pay money owed to the

6

plaintiff." *Internal Medicine Alliance v. Budell*, 290 Ga. App. 231, 239 (5) (659 SE2d 668) (2008) (citations omitted).

Although the City attempts to characterize its claim as one for specific money rather than a certain amount of money generally, it has not pointed to evidence to support this characterization. To be excepted from the general rule that money is not subject to a conversion action, the City was required to show that the money it sought "comprise[d] a specific, separate, identifiable fund" that belonged to it. *Taylor*, 250 Ga. App. at 359 (2) (citations omitted). The evidence cited by the City does not satisfy this requirement. It points to evidence that customer bills reflected itemized "taxes and fees" that included amounts collected by the OTCs but not remitted to the City. In *Taylor v. Powertel*, supra, however, we rejected a similar argument involving itemized taxes on a telephone bill, finding instead that the plaintiff "failed to show that the portion of the total telephone bill specifically attributable to taxes comes within th[e] exception and that these sums constituted an identifiable fund belonging to him to which he had an immediate right of possession." Id. at 359 (2) (citation omitted). The City also points to deposition testimony describing money being held in reserve against potential occupancy tax liability, but again it points to no evidence

that the reserve comprised a "specific, separate, identifiable fund [as required] to support an action for conversion." Id. (citations omitted).

Despite the City's efforts, the undisputed evidence shows that its conversion claim concerns "nothing more than a failure by the [OTCs] to pay money owed to the [City]." *Internal Medicine Alliance*, 290 Ga. App. at 239 (5) (citations omitted). Consequently, the trial court did not err in granting summary judgment to the OTCs on the claim.

(b) *Breach of trust.*

The trial court did not err in granting summary judgment to the OTCs on the claim for breach of trust that the City asserted in an amended complaint after the Supreme Court's 2011 decision in the case, *City of Atlanta v. Hotels.com*, supra, 289 Ga. 323. That claim, as the City concedes in its appellate briefs, concerns the alleged breach of a constructive trust. It therefore fails because no constructive trust has been imposed in this case.

A constructive trust is an equitable remedy imposed by a court to prevent unjust enrichment. *Ansley v. Raczka-Long*, 293 Ga. 138, 141 (3) (744 SE2d 55) (2013); *St. Paul Mercury Ins. Co. v. Meeks*, 270 Ga. 136, 138 (2) (508 SE2d 646) (1998). See OCGA § 53-12-132 (a) (constructive trust is "implied whenever the

8

circumstances are such that the person holding legal title to property, either from fraud or otherwise, cannot enjoy the beneficial interest in the property without violating some established principle of equity"). It is not the basis for an independent cause of action. *Morrison v. Morrison*, 284 Ga. 112, 113 (1) (663 SE2d 714) (2008). Earlier proceedings in this case established that the City was not entitled to the remedy of a constructive trust. The trial court declined to impose a constructive trust on the back taxes, and the Supreme Court affirmed that decision. *City of Atlanta v. Hotels.com*, 289 Ga. at 328 (4). Because the Supreme Court expressly affirmed the trial court's refusal to impose a constructive trust, we decline to construe that court's reference – in another part of its opinion – to monies "held in trust for the City," id. at 327 (2) (citations omitted), as a holding that the City had a constructive trust over the back taxes. Moreover, in a subsequent order declining equity jurisdiction over this appeal and transferring the appeal to this court, the Supreme Court plainly stated that "no constructive trust was actually imposed" in this case.

Accordingly, it is the law of this case that no constructive trust was imposed on the back taxes. See *Security Life Ins. Co. of America v. Clark*, 273 Ga. 44, 46 (1) (535 SE2d 234) (2000) ("Under the 'law of the case' rule, any ruling by the Supreme Court or the Court of Appeals in a case shall be binding in all subsequent proceedings

9

in that case in the lower court and in the Supreme Court or the Court of Appeals, as the case may be.") (citations and punctuation omitted). See OCGA § 9-11-60 (h). Under these circumstances, the OTCs were entitled to summary judgment on their claim for breach of a constructive trust.

3. *Discovery.*

The City argues that the trial court erred in denying its various discovery motions. At the time the City filed the motions, the case had already gone through summary judgment proceedings including appellate review of the trial court's summary judgment ruling. In the subsequent motions, the City sought additional discovery to respond to the OTCs' summary judgment motion on the new breach of trust claim and the conversion claim that the Supreme Court held the trial court had not addressed.

"[W]e will not reverse a trial court's decision on discovery matters absent a clear abuse of discretion." *Ford Motor Co. v. Gibson*, 283 Ga. 398, 401 (1) (659 SE2d 346) (2008) (citation and punctuation omitted). This standard of review includes motions seeking additional discovery pursuant to OCGA § 9-11-56 (f), the Code section upon which the City based one of its motions. *Sims v. First Acceptance Ins. Co. of Ga.*, 322 Ga. App. 361, 366-367 (4) (745 SE2d 306) (2013). The City has not

shown a clear abuse. No additional discovery would bear upon the OTC's entitlement to summary judgment on the breach of trust claim because, as discussed above, earlier proceedings in this case barred that claim. And as the City alleged the conversion claim in its original complaint, it had the opportunity to seek discovery and resolve any discovery disputes regarding that claim before the first round of summary judgment motions. We find no error in the trial court's denial of the City's motions seeking additional discovery at this point in the case.

*Judgment affirmed. Ellington, P. J., and Dillard, J., concur*.